## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Harry Spicer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 13, 2015

Court of Appeals Case No.
15A04-1504-CR-148

Appeal from the Dearborn
Superior Court

The Honorable Sally A.
Blankenship, Judge

Trial Court Cause No.
15D02-0610-FB-14

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Harry Spicer (Spicer), appeals the trial court's revocation of his probation and imposition of his suspended sentence.

We affirm.

## ISSUES

Spicer raises two issues on appeal, which we restate as:

(1) Whether there was sufficient evidence to revoke Spicer's probation; and

(2) Whether the trial court appropriately imposed the balance of Spicer's previously suspended sentence.

## FACTS AND PROCEDURAL HISTORY

On May 10, 2007, Spicer pled guilty to conspiracy to manufacture methamphetamine, a Class B felony. On the same day, the trial court accepted the plea and sentenced Spicer to fifteen years, with twelve years and 180 days suspended to probation. On April 16, 2008, Spicer was charged with operating a vehicle while intoxicated. The next day, Spicer's probation officer requested a probation violation hearing, alleging that Spicer had committed a new offense. On July 1, 2008, after finding that Spicer had violated his probation, the trial court revoked 90 days of Spicer's suspended sentence and converted it to jail time. As a result, Spicer was left with twelve years and ninety days suspended to probation.

Between January 30, 2014 and February 12, 2014, Detective Norman Rimstidt (Detective Rimstidt) of Rising Sun Police Department, Ohio County, Indiana, was monitoring an ongoing investigation of methamphetamine manufacturing involving Lisa Ellis (Ellis) and Sam Spicer (Sam)—Spicer's brother. Ellis and Sam would collect boxes of pseudoephedrine and take them to Vern Newton (Newton) in Ohio. In exchange for their efforts, Ellis and Sam would receive half of the finished batch of methamphetamine from Newton.

The record shows that in February 2014, Ellis and Sam drove to Ohio when their vehicle broke down. Newton picked them up from their location, and the following day, Ellis and Sam borrowed Newton's car to go and try to fix their car. On the way, they made a stop at Walmart. While inside Walmart, Sam was arrested for shoplifting. Having no vehicle to drive back to Indiana and the fact that Sam was in jail, Ellis called Spicer to pick her up.

When Spicer arrived in Ohio, he drove to Newton's house where he picked up Ellis and both of them went to the police station. Because Spicer and Ellis were unable to bail out Sam, they returned to Newton's house to collect the methamphetamine that Newton owed Ellis. Ellis split the drugs with Spicer as recompense for picking her up. Together, Ellis and Spicer then drove back to Ellis' house in Indiana and used the methamphetamine that Newton had given them.

A few days later, Spicer and Ellis returned to Ohio to obtain more methamphetamine from Newton. To further support Spicer's engagement in

drug activity, the State relied on the testimony of Dionne House (House). According to House, Spicer introduced her to drugs, and to sustain her drug habit, she would obtain boxes of pseudoephedrine for Sam. After Sam's arrest, House moved to another supplier in Kentucky—Spicer's cousins. House indicated that Spicer was angry at her for not going through him to obtain the methamphetamine from Kentucky.

[9] On April 4, 2014, the State filed an Information, charging Spicer with conspiracy to commit dealing in methamphetamine, a Class A felony. On April 8, 2014, Spicer's probation officer filed a second request for a probation violation hearing in which he purported that Spicer had committed a new offense. At the time of Spicer's revocation hearing, both Ellis and House had pled guilty to conspiracy to commit dealing in methamphetamine and each had received twenty-year sentences with ten years suspended to probation. As part of their plea agreements, Ellis and House were required to testify at Spicer's revocation of probation hearing. Following an evidentiary hearing on November 24, 2014, the trial court found that Spicer had violated the terms of his probation by committing a new offense. Accordingly, the trial court revoked his probation and ordered him to serve his previously suspended twelve-year sentence in the Department of Correction.

[10] Spicer now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

Spicer first contends that there was insufficient evidence to revoke his probation. Specifically, he contends that the State failed to show by a preponderance of the evidence that he was involved in drug dealing. A probation revocation proceeding is in the nature of a civil proceeding, and, therefore, the alleged violation need be established only by a preponderance of the evidence. *Jenkins v. State*, 956 N.E.2d 146, 148 (Ind. Ct. App. 2011), *trans. denied*. Violation of a single condition is sufficient to revoke probation. *Id*. As with other sufficiency issues, we do not reweigh the evidence or judge the credibility of witnesses. *Id*. We look only to the evidence which supports the judgment and any reasonable inferences flowing therefrom. *Id*. If there is substantial evidence of probative value to support the trial court's decision that the probationer committed a violation, revocation of probation is appropriate. *Id*.

As a condition of his probation Spicer was ordered not to commit a new offense. On April 4, 2014, Spicer was charged with conspiracy to commit dealing in methamphetamine. Indiana Code section 35-48-4-1.1(a) (2014) provides that a person who knowingly or intentionally (1) manufactures; (2) finances the manufacture of; (3) delivers; or (4) finances the delivery of methamphetamine commits dealing in methamphetamine. "Manufacture" is defined, in part, as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance . . . " or "the organizing or

supervising of" the production, preparation, propagation, compounding, conversion, or processing of a controlled substance. I.C. § 35-48-1-18 (2014).

[13] Indiana Code section 35-41-5-2(a) provides that a "person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony." The three elements needed to prove conspiracy are: (1) the defendant intended to commit the felony; (2) the defendant agreed with another person to commit the felony; and (3) either the defendant or the other person performed an overt act in furtherance of the conspiracy. I.C. § 35-41-5-2.

[14] Spicer maintains that the State did not have direct evidence associating him to the crime, and only used secondary testimony from Ellis and House to prove its case. Spicer further claims that the most crucial evidence came from Ellis and that House provided insignificant evidence of a supposed reaction that Spicer was annoyed at her for obtaining the methamphetamine from Kentucky.

[15] During the drug investigations, the police subpoenaed Ellis' and Newton's cell phone records which were presented at Spicer's evidentiary hearing. Ellis first indicated that she and Sam shared a cellphone. She further interpreted some of the text messages that she had sent on February 7 through February 9, 2014, to Newton and Spicer. Specifically, Ellis stated that her text message to Newton on February 7, 2014 stating, "Sammy's brother is coming to get me to go get him out so he will be probably bewanting (sic) to get a hold of you befor (sic) we go home," was in reference to Spicer "get[ting] some dope" from Newton.

(State's Exh. 2, Transcript p. 19). Also, Ellis testified that her text to Newton on February 8, 2014, stating; "we got 4 and [Spicer] wants to know if it . . . always weighs . . . I told him he was being stupid about it" was in reference to the four boxes of pseudoephedrine that Spicer had provided to Newton, and Spicer's desire to make sure that he was not being shorted by Newton. (Tr. p. 23). In addition, Ellis testified that Spicer informed her that he had gotten the four boxes of pseudoephedrine from his cousins in Kentucky.

[16] In his appellate brief, Spicer now points us to only three texts which he believes implicated him in drug dealing:

> . . . [Spicer] wanted to see what you would give us for 70 bucks.

> We got 4 and [Spicer] wants to know if it . . . weigh (sic). I told him itsalways (sic) good and it always weighs (sic) but he is being stupid about it.

> [Spicer] wanted me to ask you if you will do the same for him as you do (sic) Sammy ifso (sic) we come see you.

(Appellant's Br. p. 9). Spicer contends that the trial court erred in relying on Ellis' testimony interpreting these text messages for two reasons. First, without Ellis' explanation of the context of the text messages, it would not imply drug activity. Secondly, Spicer asserts that the "texts appear to be speaking of future planned drug activity, not events which have already occurred." (Appellant's Br. p. 10). We note that though the above texts were admitted into evidence, Ellis did not testify to the context of the first and third text messages as Spicer suggests, but only to the second text. According to Ellis, the second text, "[w]e

got 4," was in reference to the fact that Spicer had procured four boxes of pseudoephedrine in exchange for methamphetamine. (State's Exh. 2).

[17] Spicer also attempts to cast doubt on Ellis' testimony that she did not initially report Spicer's involvement in drug dealing. The record reveals that on February 13, 2014, the police arrived at Ellis' and Sam's home due to a domestic disturbance. Ellis was not arrested on that occasion and did not mention Spicer in any drug activity. However, on March 26, 2014, Ellis gave a sworn statement to the police incriminating Spicer in the exchange of pseudoephedrine for methamphetamine. As noted in the preceding paragraphs, "[a]s with other sufficiency issues, we do not reweigh the evidence or judge the credibility of witnesses." *Jenkins*, 956 N.E.2d at 148. Spicer's arguments to the contrary is an invitation for us to reweigh the evidence.

[18] Under these facts and circumstances, we conclude that the State established by a preponderance of the evidence that Spicer violated the terms of his probation by committing a new offense.

## II. *Revocation of Probation*

[19] Finally, Spicer claims that the trial court abused its discretion by ordering him to serve the balance of his previously suspended twelve-year sentence. It is well established that probation is a favor granted by the State and is not a right to which a criminal defendant is entitled. *Sparks v. State*, 983 N.E.2d 221, 224 (Ind. Ct. App. 2013). The decision to revoke probation lies within the sound discretion of the trial court. *Id*. Thus, a trial court's decision to revoke

probation and its subsequent sentencing decision are reviewed for an abuse of discretion. *Id.*

[20] Once a trial court has concluded that probation has been violated, it may continue the defendant on probation, extend the probationary period for not more than one year beyond the original period, or order all or part of the previously-suspended sentence to be executed. Ind. Code § 35-38-2-3 (2014).

[21] Here, we find that the trial court was well within its discretion to revoke Spicer's probation. After Spicer's first probation violation, the trial court revoked only 90 days of his sentence. Despite the trial court's leniency, Spicer violated his probation again by committing a second crime in 2014. The foregoing facts demonstrate Spicer's disregard for court orders and the probation system. As such, we conclude that the trial court was within its discretion in determining that Spicer was not a good candidate for probation and revoking his suspended twelve-year sentence in the entirety. Accordingly, we affirm the trial court's order revoking Spicer's probation.

## CONCLUSION

[22] Based on the above, we conclude that there was sufficient evidence to support the revocation, and the trial court did not abuse its discretion in revoking Spicer's previously suspended twelve-year sentence.

[23] Affirmed.

[24] Brown, J. & Altice, J. concur